IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIANA CLARK                         :
                                    :         CIVIL ACTION
      Plaintiff,           :
                                    :
   v.                            :
                                    :         NO. 13-0271
ALLSTATE INSURANCE COMPANY          :
                                    :
      Defendant.           :

## MEMORANDUM

BUCKWALTER, S.J.                                                      May 7, 2013

Currently pending before the Court is Defendant Allstate Insurance Company's Motion to Dismiss Plaintiff Liana Clark's Amended Complaint. For the following reasons, the Motion is denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from an insurance dispute over damage to Plaintiff Clark's home. The facts, as set forth in the Amended Complaint, are as follows. On or about August 27, 2011, Ms. Clark's home, which was insured by Defendant Allstate Insurance Company, suffered damage. (Am. Compl. ¶¶ 3, 5.) Notice of this loss was given to Allstate on August 31, 2011. (Id. ¶ 6.) On September 26, 2011, Allstate's adjuster, Paul DeBeer, inspected the property along with Plaintiff's Public Adjuster Brian Singer and Plaintiff's husband, Mason Schecter. (Id. ¶ 7.) During his inspection, Mr. DeBeer took photos, measurements, and notes as he observed

damages from the incident on August 27.  (Id. ¶ 8.)  After several inquiries requesting an update on the status of Plaintiff's claim were made, a letter, dated September 24, 2011 from Defendant updating the status of the claim, was received by Plaintiff on October 12, 2011.  (Id. ¶ 9.)  The letter noted that an "investigation of the loss is continuing."  (Id. ¶ 10.)

On October 13, 2011, Plaintiff was informed by her public adjustor that Allstate had made a request for a second inspection of the property on October 20.  (Id. ¶ 11.)  Allstate did not provide a reason for the second inspection or delay in determination of the coverage.  (Id.)  Plaintiff sent Allstate an electronic request as to why the second inspection was needed, and she also asked, "What happened to the last inspection results?"  (Id.)  Plaintiff then placed several calls to Allstate to further understand any reason for an additional inspection.  (Id.)  Allstate's telephone representatives read from Mr. DeBeer's inspection notes, noted that Mr. DeBeer did not perform an inspection of the roof, and speculated that the reason for the request was to complete the inspection of the roof.  (Id.)  Plaintiff communicated this information to her Public Adjustor via e-mail at 5:56 p.m. on October 13.  (Id.)  At 8:00 p.m. on October 14, Plaintiff received a phone call from Allstate's representative, Jeff Wood, who confirmed that an additional inspection was required of the roof because Mr. DeBeer did not inspect the roof and Allstate did not have any photographs of the property, though they did have Mr. DeBeer's notes.  (Id. ¶ 12.)   Later that day, Allstate representative Byesheba Burgess relayed an e-mail from Allstate representative Lynn Brownlee to Plaintiff, which stated that Mr. DeBeer had left the area and took with him all his notes from the original inspection.  (Id. ¶ 13.)

On October 17, 2011, Plaintiff requested from Ms. Burgess copies of all materials, notes, and pictures from Mr. DeBeer's inspection.  (Id. ¶ 14.)  She also requested to speak with Mr.

Brownlee directly. (Id.) She spoke with Mr. Brownlee the same day, and, after much discussion, he admitted that Allstate did, in fact, possess Mr. DeBeer's notes. (Id. ¶ 15.) Plaintiff and Mr. Brownlee subsequently agreed to an additional inspection by Mr. Wood that was to be limited solely to an inspection of the roof. (Id. ¶ 16.) They also agreed that access to the interior of the property was not necessary and would not be provided, and that following the inspection, Mr. Wood would rely upon both Mr. DeBeer's notes and Mr. Singer's measurements and pictures when producing an estimate for the remaining scope of the claim. (Id.)

On October 20, Mr. Wood inspected the roof of Plaintiff's property for damage related to the incident on August 27. (Id. at 17.) Mr. Singer accompanied Mr. Wood throughout the inspection and offered photographs and measurements as agreed. (Id. at 18) On October 24, Mr. Wood completed an estimate for $632.47, the scope of which covered the roof and the siding but excluded both the interior of the home and emergency repair expenses incurred by Plaintiff. (Id. at 19.) On October 25, Plaintiff called Allstate and again requested all work product produced by Mr. DeBeer, Mr. Wood, Mr. Brownlee, and any other investigators or Allstate personnel involved. (Id. at 20.) This request was refused by Allstate representative Carl Maxwell. (Id.) Plaintiff then sent an email repeating the request to several Allstate employees. (Id.)

On October 26, 2011, Roman Suarez, Allstate Market Catastrophe Claims Manager, State of Pennsylvania, contacted Plaintiff. (Id. ¶ 21.) Plaintiff and Mr. Suarez agreed in corresponding emails to the same conditions previously agreed to by Mr. Brownlee on October 17 that "Brian [Singer, Plaintiff's Adjuster] would provide measurements, pictures and his estimate for the damages to our house (all of which were provided to Jeffrey Wood last week) directly to Roman, and that hopefully a reasonable settlement can be reached by the end of the week. Currently, no

3

additional inspections beyond the two already conducted on September 26th and October 20th are contemplated or scheduled." (Id.)

On October 27, 2011, Plaintiff asked Roman Suarez via email, "At this time an I required to provide a signed, sworn proof of loss?" (Id. ¶ 22.) Mr. Suarez replied, "I will schedule a Conference Call with [Brian Singer] and Mr. Hugh Davis, one of our Leaders that works with me. After said conversation I will let you know if we need a Proof of Loss" (Id.) The same day, after reviewing the language contained in the Allstate Homeowners Policy, Plaintiff provided a Proof of Loss via email to Mr. Suarez. (Id. ¶ 23.)

On October 28, during a conference call scheduled for the purpose of discussing the claim and attended by Plaintiff, Mr. Singer, and Mr. Suarez, Mr. Suarez acknowledged receipt of the Proof of Loss and stated that (1) because of his receipt of the Proof of Loss he would no longer be involved in the claim, and (2) another adjuster would be assigned to the claim. (Id. ¶ 24.) Also on October 28, Plaintiff repeated the earlier request for all of Mr. DeBeer's notes via email sent to Mr. Suarez and all other Allstate employees. (Id. ¶ 25.) On October 31, Mr. Suarez wrote to Plaintiff and informed him that they were unable to locate Mr. DeBeer to retrieve the information he obtained during his inspection on September 26. (Id. ¶ 26.)

Also on October 31, Defendant representative Clare Erskine sent a letter to Plaintiff requesting a third inspection of the property. (Id. ¶ 27.) Plaintiff responded to Ms. Erskine the same day and stated, "Lynn Brownell and Roman Suarez both confirmed that no additional inspections were needed. Nothing has changed since then except your receipt of the POL [Proof of Loss]." (Id. ¶ 28.) Plaintiff also repeated an earlier request for a reason for a third inspection. (Id.) Ms. Erskine informed Plaintiff that she would no longer correspond with him via email.

(Id. ¶ 29.)

On November 1, Plaintiff e-mailed a comprehensive request for all materials relating to the claim, including:

> (1) Each and every complete and unredacted original claim file kept in connection with the subject claim No. 0216418582 as maintained at home office, any regional office, any local office or any other claims office maintaining such files, including all file contents, notes, file jackets, audio recordings, computer files, photos and every e-mail[.]
>
> (2) Each and every complete and unredacted original underwriting file kept in connection with the subject policy No. 908725529 as maintained at home office, any regional office, any local office or any other office maintaining such files, including all file contents, notes, file jackets, audio recordings, computer files, photos and every e-mail[.]
>
> (3) Any and all other complete and unredacted original documents, files, notes, computer files, photos, emails, audio recordings, or other written, printed or electronic media kept in connection with the subject claim No. 0216418582 and/or the subject policy No. 908725529, as maintained at home office, any regional office, any local office or any other office of either Allstate or any of its other employees, representatives, agents, contractors, subcontractors, advisers or attorneys.

(Id. ¶ 30.)

On November 1, Ms. Erskine sent correspondence to Plaintiff's Public Adjuster, Mr. Singer, confirming that Mr. DeBeer had been located and his photographs had been received. (Id. ¶ 31.) On November 11, Ms. Erskine sent additional correspondence to Plaintiff containing two estimates. (Id. ¶ 32.) One of these estimates was alleged to be that of Mr. DeBeer, which failed to include the date on which the estimate was completed. (Id. ¶ 33.) Additionally, it included damages to the roof, which was allegedly not inspected by Mr. DeBeer. (Id. ¶ 34.) Furthermore, the damage estimates were identical to those in the estimate prepared by Mr. Wood on October 24. (Id.) Defendant's representative Larry Miller's estimate was also included,

5

before he had done an inspection of the property. (Id. ¶ 35.) It represented an actual cash value increase for the exterior from $632.47 to $24,185.70. (Id.)

Defendant determined that Plaintiff suffered a loss to the property that was covered under the terms and conditions of the policy, but Plaintiff claims Allstate failed and refused to indemnify her completely for the loss. (Id. ¶ 36.)

Plaintiff filed suit on August 14, 2012 in the Philadelphia County Court of Common Pleas. A Complaint was served on Defendant on December 17, 2012 bringing claims for (1) breach of contract, (2) bad faith, and (3) violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). The case was removed to this Court on January 16, 2013. Plaintiff filed an Amended Complaint on February 15, 2013. Defendants then filed the instant Motion to Dismiss Counts II and III of the Amended Complaint (the bad faith and UTPCPL claims) on March 6, 2013. Plaintiff filed a Response in Opposition on March 19, and Defendants filed a Reply Brief on March 27, 2013. The Court will now consider the merits of the Motion.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the

7

court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's bad faith claim, Unfair Trade Practices and Consumer Protection Law claim, and Plaintiff's attempt to claim punitive damages.[1] We now address these each in turn.

### A. Bad Faith Claim

The Pennsylvania General Assembly has promulgated a statute under which insurers may be held liable for their "bad faith" actions towards insureds.[2] While the statute does not explicitly define "bad faith," both the Pennsylvania federal and state courts have recognized that, in the insurance context, "bad faith" is synonymous with "frivolous or unfounded refusal to pay proceeds of a policy." Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir.

---

[1] Defendant attaches documents outside the pleadings to its Motion to Dismiss, including copies of the estimate provided to Defendant by Plaintiff's public adjustor and numerous e-mail exchanges between Plaintiff's husband and Allstate employees. Defendant cannot attach these unauthenticated documents under Fed. R. Civ. P. 12(d), which notes that the attachment of documents outside the pleadings turns a Motion to Dismiss into a Motion for Summary Judgment. As such, the Court does not consider them in reaching its decision.

[2] The statute provides, in relevant part, that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of the interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.

2000) (internal citations and quotations omitted); Treadways, LLC v. Travelers Indem. Co., No. Civ.A.08-4751, 2011 WL 1672022, at *2–3 (E.D. Pa. May 4, 2011) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)) (further citation omitted); Atiyeh v. Nat'l Fire Ins. Co., 742 F. Supp. 2d 591, 598 (E.D. Pa. 2010) (internal citations omitted). In order to prevail on a bad faith claim, a claimant must show by clear and convincing evidence that: (1) the defendant insurer did not have a reasonable basis for denying the policy benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis when it denied the claim. Keefe, 203 F.3d at 225 (3d Cir. 2000) (further citation omitted). The "clear and convincing" standard requires a claimant to show that "the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotations and citation omitted). Moreover, the claimant must show that the insurer acted in bad faith based on some motive of self-interest or ill will. Atiyeh, 742 F. Supp. 2d at 598 (citing Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). In doing so, a claimant need not show that the insurer's conduct was fraudulent, but mere negligence or bad judgment is insufficient to make out a claim based on bad faith. Id.

Allstate argues that, accepting all the facts pled in the Amended Complaint as true, Plaintiff's argument basically comes down to two allegations, both of which are insufficient to sustain a claim for bad faith: Allstate acted in bad faith when it (1) took two and a half months to investigate and eventually pay out on Plaintiff's claim, and (2) did not pay out the value to which Plaintiff felt she was entitled. Plaintiff responds that the conduct she has alleged goes beyond the two claims Defendant cites and is sufficient to demonstrate there was frivolous or unfounded

9

refusal to pay out on the claim.

Though the Amended Complaint would have ideally included additional facts suggesting that Allstate's eventual payout was purposely less than Plaintiff deserves, the Complaint does create questions about what happened and why—the answers to which could suggest that Allstate acted in bad faith—regardless of whether or not two and a half months was an appropriate amount of time to address the claim. For example, the sudden disappearance of Mr. DeBeer, as well as his notes and photographs, is unusual and unexplained, as is the fact that there were discrepancies as to whether or not he originally inspected the roof of the property. Additionally, the shifting around of Plaintiff's claim to multiple agents (including Paul DeBeer, Lynn Brownell, Jeffrey Wood, Byesheba Burgess, Carl Maxwell, Roman Suarez, Hugh Davis, Claire Erskine, Michael Cybularz, and Larry Miller) and Allstate's refusal or inability to provide Plaintiff with information on her claim is suspect. Ultimately, reasonable explanations could be provided for all of these factors. This, however, is an issue for summary judgment. Based solely on the allegations of the Amended Complaint, taken in a light most favorable to Plaintiff, Plaintiff has alleged enough to raise the allegation of bad faith above the "speculative" level and into that of "plausible." As a result, Defendant's Motion to Dismiss is denied.

**B. Unfair Trade Practices and Consumer Protection Law**

The "catch-all provision" of the UTPCPL, under which Plaintiff brings her claim, prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. § 201-2(4)(xxi). It forbids marketplace participants from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Id. at § 201-3. The statute was amended in 1997 to add the

10

word "deceptive" alongside "fraudulent."  Courts in this district are divided as to whether or not the catch-all provision still requires that the elements of common-law fraud be satisfied. Compare Rock v. Voshell, 397 F. Supp. 2d 616, 622 (E.D. Pa. 2005) (finding all of the fraud elements are still required, even with the addition of the "deceptive" language) with Sacks v. DJA Auto., No. Civ.A.12-284, 2013 U.S. Dist. LEXIS 7824, at *34 (E.D. Pa., Jan. 18, 2013) (finding that the added prohibition on deceptive conduct "permits plaintiffs to proceed without satisfying all of the elements of common-law fraud.").  Under the deceptive practice theory employed in Sacks, a Plaintiff must demonstrate (1) defendant made a misrepresentation or engaged in deceptive conduct—conduct that is likely to deceive a consumer acting reasonably under similar circumstances, (2) he justifiably relied on defendant's misrepresentation or deceptive conduct, and (3) he was damaged by his justifiable reliance on defendant's alleged misrepresentation or deceptive conduct.  Sacks, 2013 U.S. Dist. LEXIS 7824 at *33–34 (citing Seldon v. Home Loan Servs., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)).

      Defendants argue that the Court should require Plaintiff to meet all the elements of common-law fraud (and, presumably, the heightened pleading standard for fraud of Fed. R. Civ. P. 9(b)).  Plaintiffs contend, conversely, that they do not have to meet the heightened standard under the "deceptive conduct" language of the statute.  We are inclined to agree with the courts in this jurisdiction who have found that deceptive conduct need not be fraudulent.  Under this standard, Plaintiff has alleged enough to meet the plausibility standard of Twombly and Iqbal. The conduct alleged and discussed above, while potentially having a reasonable explanation, examined in the light most favorable to Plaintiffs suggests deceptive conduct.  As such, Plaintiff will be allowed to proceed on this claim.

### C. Punitive Damages

Pennsylvania law states:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

. . .
   (2) Award punitive damages against the insurer.

42 Pa. Cons. Stat. § 8371. Upon meeting the bad faith standard under § 8371, a plaintiff may then obtain punitive damages upon a showing that the defendant engaged in "outrageous conduct, which is defined as an act which, in addition to creating 'actual damages, also imports insult outrage, and is committed with a view to oppress or is done in contempt of plaintiff's rights.'" Fairsea v. Phila. Indem. Ins. Co., No. Civ.A.12-0595, 2012 U.S. Dist. LEXIS 177914, at *10 n.3 (E.D. Pa. Dec. 14, 2012) (citing Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 235 (3d Cir. 1997) (other internal citations omitted)).

Defendant contends that the allegations in the Amended Complaint do not rise to the level of outrageous or reckless conduct that warrant an award of punitive damages. While Defendant ultimately may be correct, the potential that Defendant's conduct rose to this level is present based solely on the Amended Complaint . As such, the Court declines to dismiss the claim for punitive damages at this stage of litigation .

### IV. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss is denied. Though the Amended Complaint would have ideally been more specific in some of its allegations, taken in a light most favorable to Plaintiff it does overcome the plausibility requirement set forth in Twombly and Iqbal. The facts alleged could give rise to the claims for bad faith and under the UTPCPL, as

well as a claim for punitive damages. As noted above, discovery could provide rational reasons for Allstate's behavior; should that occur, Defendant is free to raise these issues again at Summary Judgment.

  An appropriate Order follows.